# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

___

| | | |
|---|---|---|
| **WENDY FOSTER ZUNIGA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14-cv-2870-JDT-tmp |
| v. | ) | |
| | ) | |
| **QUENTIN COOPER and CITY OF MEMPHIS,** | ) | |
| | ) | |
| | ) | |
| Defendants. | | |

___

## REPORT AND RECOMMENDATION
___

Before the court is the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by defendant the City of Memphis ("the City") on March 31, 2015. (ECF No. 31.) On April 7, 2015, *pro se* plaintiff Wendy Foster Zuniga filed a response in opposition along with a motion to amend her complaint. (ECF Nos. 33 & 34.) The City filed a response to Zuniga's motion to amend on May 8, 2015. (ECF No. 37.) For the reasons below, it is recommended that Zuniga's motion to amend be denied and the City's motion be granted. Additionally, it is recommended that all claims against defendant Quentin Cooper be dismissed without prejudice for failure to timely effect service of process.

### I. PROPOSED FINDINGS OF FACT

This case arises from a sexual assault that occurred in the early morning hours of September 14, 2002. Wendy Foster Zuniga was walking home from work when Quentin Cooper, a crime scene officer with the Memphis Police Department ("MPD"), arrested her. Zuniga alleges that Cooper then took her to another location and raped her. On September 12, 2003, Zuniga filed a lawsuit in the Western District of Tennessee against the City and Cooper. The lawsuit was filed pursuant to 42 U.S.C. § 1983 and § 1988 ("2003 lawsuit"), and alleged violations of her rights under the Fourth and Fourteenth Amendments to the United States Constitution and under Article 1, §§ 7 and 8 of the Tennessee Constitution. Zuniga based her theory of the City's liability on its failure to train, supervise, and discipline its police officers. This court dismissed her case without prejudice on February 10, 2006, for failure to prosecute. The court cited Zuniga's lack of responses to the interrogatories and requests for production of documents served upon her by both Cooper and the City, her failure to appear at two scheduled depositions, and her failure to maintain contact with her counsel. The court also noted that Zuniga's counsel had not had communication with her since April 2004, and that her counsel's attempts to locate her via mail, phone, a computer search firm, and several public databases were unsuccessful. See Foster v. Cooper and City of Memphis, No. 03-2689 (W.D. Tenn.), ECF No.

59, Order Adopting Magistrate Judge's Report and Recommendation and Order of Dismissal.

Zuniga initiated the present lawsuit against the City and Cooper on November 4, 2014 ("2014 lawsuit"). (ECF No. 1.) In her complaint titled "Complaint for Violation of Civil Rights under 42 U.S.C. § 1983," she alleges that Cooper raped her in 2003 and that her "rape kit" or sexual assault kit ("SAK") was subsequently lost. She alleges that in April 2014, she was notified that her SAK had been found. Zuniga also asserts that before May 2014, she was unaware of the 2003 lawsuit and its dismissal for failure to prosecute.

The City filed its present motion on March 31, 2015. (ECF No. 31.) The City first argues that the statute of limitations period has expired on any § 1983 claims arising from the sexual assault that occurred on September 14, 2002. The City also argues that any § 1983 claim stemming from the City's alleged failure to test her SAK must be dismissed for failure to state a claim because the Due Process Clause does not impose a duty on states to investigate or prosecute crimes. In addition, the City argues in the alternative that it is entitled to summary judgment on Zuniga's claim for failure to test her SAK because the SAK, along with other evidence, was in fact timely tested following her sexual assault. The City points out that, although the swabs taken from Zuniga did not show the presence

of any DNA matching Cooper, other evidence from the crime scene indicated the presence of sperm matching Cooper. As a result, Cooper was found to have violated MPD personal conduct rules and was subsequently terminated from the MPD. Additionally, criminal charges were filed against Cooper by the Shelby County District Attorney General for Rape and Official Oppression, and on January 31, 2005, he pled guilty to a charge of Patronizing Prostitution in violation of Tennessee Code Annotated § 39-13-514. He received a sentence of 11 months and 29 days, for which probation was imposed in lieu of jail time. In support of its motion for summary judgment, the City attached the affidavit of Major Mark Winters, along with supporting exhibits. Major Winters's affidavit states, in pertinent part:

> 11. . . . an investigation by the Inspectional Services Bureau was initiated on September 14, 2002 when, then Ms. Wendy Foster, now Wendy Foster Zuniga, filed a report that she had been sexually assaulted that morning at 3:11 a.m. by Memphis Police Department (MPD) Officer Quentin Cooper, # 1550, at or near 3339 Fontaine Rd. The ISB file number is S02-075.
>
> 12. The investigation consisted of, *inter alia*, statements being taken from several witnesses, including, civilian witnesses, principal officer witnesses, and officer witnesses; and the results from a Sexual Assault Kit (SAK) analysis performed by Tennessee Bureau of Investigation (TBI) as described below.
>
> 13. In response to Ms. Foster's initial report of sexual assault, Detective B. White took Ms. Foster to the Rape Crisis Center at 1:27 p.m. on the same day. While at the Rape Crisis Center, Ms. Foster was examined by a nurse, Anita Boykin, and a SAK was

obtained during this examination.  The Memphis Assault Resource Center case number is 02-0894.

14.  At 12:45 p.m. on the same day, Sgt. G. Sanders retrieved a dust facemask from the crime scene area of 3339 Fontaine.  The facemask was submitted as evidence into the MPD Property and Evidence Room.

15. At 5:22 p.m. on the same day, Lt. M. Burton and Cooper arrived at 201 Poplar, Sex Crimes Bureau.  Lt. Burton served Cooper with a search warrant to obtain blood, hair, clothing, and other DNA testing materials.  Rape Crisis Nurse Anita Boykin obtained the physical evidence as stated within the search warrant.

16. On September 20, 2002, I telephoned Mr. Hyun Kim, DNA Forensic Scientist at the Rape Crisis Center to ascertain the correct procedures of obtaining the DNA test and results of Ms. Foster's SAK and related materials.  Mr. Kim faxed the appropriate request form, the Request for PCR/DNA Analysis form, so that the evidence can be submitted to the TBI lab in Jackson, TN.  The completed request form was then faxed back to Mr. Kim.  A copy of the completed request form is attached to this Affidavit as Exhibit #2.

17. On December 18, 2002, Mr. Kim brought the official TBI report to my office regarding the DNA test.  The results indicated that the swabs taken from Ms. Foster as part of her SAK did not show the presence of any DNA matching Officer Cooper.  However, testing of the dust facemask taken from the crime scene indicated the presence of sperm matching Officer Cooper.  This report is dated November 22, 2002.  The Official Serology/DNA Report is attached to this Affidavit as Exhibit #3.

18. As a result of the internal investigation, a Statement of Charges, Exhibit #4, and Administrative Summons, Exhibit #5, were filed against Officer Cooper on March 16, 2003.  Officer Cooper was charged with violating regulation DR-104, Personal Conduct.  A copy of DR-104 is attached as Exhibit #6.

19. An Administrative Hearing was held on April 30, 2003, by Deputy Chief A.L. Gray regarding Officer Cooper's actions where it was found that Officer Cooper was in violation of DR #104-Personal Conduct and subsequently terminated from MPD. The Hearing Summary is attached as Exhibit #7.

20. An officer who is terminated via an Administrative Hearing decision has the opportunity to file an appeal with the Civil Service Commission within 10 days of ten (10) calendar days after receipt of written notification of the action taken. Officer Cooper did file a timely appeal with the Commission.

21. Officer Cooper's Appeal by the Civil Services Commission was held on April 29. 2005. The Commission sustained the DR-104 charges and the termination of Officer Cooper's employment finding that the disciplinary actions were reasonable under all of the circumstances. Officer Cooper failed to file an appeal of the Civil Services Commission's decision.

22. Pursuant to standard procedures, this case was submitted to Mr. Carter Myers of the Shelby County Attorney General's Office. I received a subpoena to appear before the Shelby County Grand Jury on February 28, 2003. On March 13, 2003, I presented this case before the Grand Jury and an indictment was issued for two counts of Rape and two counts of Official Oppression.

23. Mr. Cooper entered a guilty plea for a lesser charge of Patronizing Prostitution in violation of T.C.A. 39-13-514 on January 31, 2005 and received a sentence of 11 months and 29 days, for which probation was imposed in lieu his serving the sentence. All other counts against Mr. Cooper were dropped. A copy of the Judgment is attached as Exhibit #8.

On April 7, 2015, Zuniga filed her response in opposition, which she titled, "Motion to Object Dismissal and Show Cause With Attached Proposal of Amended Complaint and 26 Rule of Initial Disclosures Showing Cause Why This Should Not Be Granted

- 6 -

and Continuance Shall Proceed." (ECF No. 33.) Zuniga's response does not address any of the arguments raised in the City's motion, nor does she cite or attach any evidence to dispute the evidence submitted by the City. On that same date, Zuniga filed a "Motion for Leave to Amend, Correct, and Add Parties Show Cause with Factual Brief." (ECF No. 34.) In this motion, Zuniga seems to assert new state law claims of malicious prosecution and false imprisonment, as she vaguely describes a widespread conspiracy among various City and Shelby County government officials, the Shelby County District Attorney General's Office, and various attorneys to hinder her from pursuing her 2003 lawsuit.

## II. PROPOSED CONCLUSIONS OF LAW

### A. Standard of Review

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007), are applied. Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir.

2011) (quoting Iqbal, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679; see also Twombly, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

Additionally, in assessing whether the City is entitled to summary judgment in this case, Federal Rule of Civil Procedure 56 governs. Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Geiger v. Tower Auto., 579 F.3d 614, 620 (6th Cir. 2009). In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). "The moving party bears the initial burden of production." Palmer v. Cacioppo, 429 F. App'x 491, 495 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986)). Once the moving party has met its burden, "the burden shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" Jakubowski v. Christ Hosp., Inc., 627 F.3d 195, 200 (6th Cir. 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "[I]f the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmovant has the burden, the moving party is entitled to summary judgment as a matter of law." Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001). "The central issue 'is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Palmer, 429 F. App'x at 495 (quoting Anderson, 477 U.S. at 251–52).

**B.  § 1983 Claims Arising from Sexual Assault**

To state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States by a person acting under color of state law. Flagg Bros. Inc. v. Brooks, 436 U.S. 149, 155 (1978); Upsher v. Grosse Pointe Pub. Sch. Sys., 285 F.3d 448, 452 (6th Cir. 2002); Elliott v. U.S. Dep't of Hous. and Urban Dev., 43 F. App'x 795, 796 (6th Cir. 2002); Person v. Roach, No. 14-cv-2788-JDT-tmp,

2015 WL 3606595, at *2 (W.D. Tenn. May 11, 2015). "As § 1983 does not have its own statute of limitations, the court must look to state law to determine the limitations period." Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) (citing Roberson v. Tennessee, 399 F.3d 792, 794 (6th Cir. 2005)). Under Tennessee law, the statute of limitations for a civil action for compensatory or punitive damages brought under the federal civil rights statutes is one year after the cause of action has accrued. Tenn. Code Ann. § 28-3-104(a)(3); Johnson, 777 F.3d at 843. In § 1983 cases, a cause of action accrues and the statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his or her complaint. Johnson, 777 F.3d at 843 (citing Roberson, 399 F.3d at 794); see also Kelly v. Burks, 415 F.3d 558, 561 (6th Cir. 2005); Collyer v. Darling, 98 F.3d 211, 220 (6th Cir. 1996). A plaintiff has reason to know of his or her injury when it could have been discovered through the exercise of reasonable diligence. Friedman v. Estate of Presser, 929 F.2d 1151, 1159 (6th Cir. 1991).

Zuniga's sexual assault occurred on September 14, 2002. She filed her 2003 lawsuit based on the assault on September 12, 2003, two days before the applicable statute of limitations period expired. Her first lawsuit was dismissed without prejudice on February 10, 2006. The Sixth Circuit has stated:

> [i]t is generally accepted that a dismissal without prejudice leaves the situation the same as if the suit had never been brought, and that in the absence of a statute to the contrary a party cannot deduct from the period of the statute of limitations the time during which the action so dismissed was pending.

Wilson v. Grumman Ohio Corp., 815 F.2d 26, 27 (6th Cir. 1987); see also Rice v. Jefferson Pilot Fin. Ins. Co., 578 F.3d 450, 457 (6th Cir. 2009) (noting that the Sixth Circuit has consistently held "that a dismissal of a suit without prejudice usually does not toll the statute of limitations"); Ester v. Amoco Oil Co., 65 F.3d 168 (6th Cir. 1995) (holding that a dismissal without prejudice does not normally toll the statute of limitations and complaints that are re-filed after the statute of limitations has run are untimely). The statute of limitations period for any claims arising from Zuniga's sexual assault expired on September 14, 2003, one year from when the incident occurred. Zuniga's first lawsuit, although filed timely, was dismissed without prejudice over two years after the statute of limitations had already run. Therefore, unless the court finds that an equitable exception applies, Zuniga's 2014 lawsuit is untimely.

"The doctrine of equitable tolling allows courts to toll a statute of limitations when 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" Robertson v. Simpson, 624

F.3d 781, 783 (6th Cir. 2010) (quoting Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 560-61 (6th Cir. 2000)). The doctrine of equitable tolling "is used sparingly by federal courts" and "[t]he party seeking equitable tolling bears the burden of proving he is entitled to it." Robertson, 624 F.3d at 784. The Sixth Circuit has adopted a test for analyzing equitable tolling claims. The factors to be considered are "'(1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement.'" Keenan v. Bagley, 400 F.3d 417, 421 (6th Cir. 2005) (quoting Andrews v. Orr, 851 F.2d 146, 151 (6th Cir. 1988)). "[T]hese factors 'are not necessarily comprehensive or always relevant; ultimately every court must consider an equitable tolling claim on a case-by-case basis.'" Id. (quoting King v. Bell, 378 F.3d 550, 553 (6th Cir. 2004)).

The court finds that equitable tolling is not applicable in this case. Zuniga filed the 2003 lawsuit based on the same incident which gives rise to the present case, which evidences that she was aware of the filing requirement. Although Zuniga was diligent in originally filing her complaint, she subsequently lost contact with her attorneys, did not respond to

outstanding discovery requests, and did not respond to the court's orders. The court also finds that the City would be prejudiced by the passage of nearly ten years from the dismissal of the prior lawsuit to the filing of the present lawsuit. Therefore, any § 1983 claims arising from the sexual assault that occurred in 2002 are barred by the applicable statute of limitations, and it is recommended that those claims be dismissed.

**C.   § 1983 Claims Arising from Failure to Test SAK**

The City construes Zuniga's complaint as bringing a claim against the City under § 1983 for its failure to test her SAK and/or its loss of her SAK. Such a claim sounds in the Due Process Clause of the Fourteenth Amendment. The Fourteenth Amendment states, "No state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. However, the Due Process Clause "does not require the federal government or the state to provide services, even so elementary a service as maintaining law and order." Pierce v. Springfield Twp., Ohio, 562 F. App'x 431, 436 (6th Cir. 2014) (quoting Bowers v. DeVito, 686 F.2d 616, 618 (7th Cir. 1982)); see also Town of Castle Rock v. Gonzales, 545 U.S. 748, 767-68 (2005) (holding that the Due Process Clause does not confer a right on private individuals to have the state enforce a restraining order); DeShaney v. Winnebago Cnty. Dep't

of Soc. Servs., 489 U.S. 189, 195 (1989) ("The [Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.").

In a recent case, this court held that the Due Process Clause does not confer a right upon private individuals to have the State test a SAK. There, the court stated:

> [a]ll of Plaintiff's facts stem from the City's inaction having the SAKs tested. There are no facts to suggest any affirmative actions taken by the Defendant. This is simply a case of the Defendant's failure to investigate, which is not redressable under the due process clause. Plaintiff's Due Process claim is hereby DISMISSED.

Doe v. Memphis, No. 13-cv-3002 (W.D. Tenn.), ECF No. 44, Order Granting in Part and Denying in Part Defendant's Motions to Dismiss. Therefore, the court recommends that Zuniga's § 1983 claim relating to the loss of and/or failure to test her SAK be dismissed pursuant to Rule 12(b)(6).

Additionally, the City is entitled to summary judgment pursuant to Rule 56 on Zuniga's claim relating to the loss of and/or failure to test her SAK. Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The City has submitted evidence that Zuniga's SAK was not lost and in fact was tested in 2002. In addition to Major Winters's affidavit confirming that the SAK was tested, the City has presented exhibits that support his statements, including a Request for PCR/DNA Analysis submitted by MPD and dated September 23, 2002, and an Official Serology/DNA Report from the Tennessee Bureau of Investigation dated November 22, 2002. (ECF Nos. 31-6 & 31-7.) Because Zuniga has not submitted any countervailing evidence to create a genuine issue of material fact, the court finds that the City is entitled to summary judgment on this claim.

**D. Zuniga's Proposed Amended Complaint is Futile**

Federal Rule of Civil Procedure 15(a) provides that, after a responsive pleading has been filed, a party may file an amended complaint "only by leave of the court or by written consent of the adverse party," but such "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "This rule 'reinforces the principle that cases should be tried on their merits rather than the technicalities of pleadings.'" Hopkins v. Chartrand, 566 F. App'x 445, 449 (6th Cir. 2014) (quoting Inge v. Rock Fin. Corp., 388 F.3d 930, 937 (6th Cir. 2004)). Nevertheless, a court may deny a motion for leave to amend the complaint if the amendment would be futile. Letvin v.

Lew, No. 14-2147, 2015 WL 5255143, at *3 (6th Cir. Sept. 9, 2015) (citing Murphy v. Grenier, 406 F. App'x 972, 977 (6th Cir. 2011)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417, 420 (6th Cir. 2000); see also Jackson v. WMC Mortg. Corp., No. 2:12-cv-02914-JPM-cgc, 2013 WL 5550228, at *6 (W.D. Tenn. Oct. 3, 2013).

As best as the court can tell, Zuniga's thirty-seven page motion to amend seems to allege new state law claims of malicious prosecution and false imprisonment that occurred during the pendency of her previous lawsuit, in addition to alleging additional facts relating to her existing § 1983 claims. However, Tennessee law provides that both false imprisonment and malicious prosecution claims must be commenced within one year after the cause of action accrued. Tenn. Code Ann. § 28-3-104. Therefore, the statute of limitations period for Zuniga's proposed new state law claims expired, at the latest, one year after the dismissal of the 2003 lawsuit.[1] Additionally, as discussed above, the statute of limitations period has expired as to any § 1983 claims arising from her

---

[1] It is unclear from Zuniga's motion to amend exactly when during the pendency of the 2003 lawsuit the acts giving rise to the malicious prosecution and false imprisonment claims occurred. The court, for purposes of deciding this motion, will assume that these alleged unlawful acts may have occurred up to the date of dismissal of the 2003 lawsuit, i.e., February 2006.

- 16 -

September 2002 sexual assault. Therefore, the court finds that Zuniga's proposed amended complaint is futile, and it is recommended that her motion to amend be denied.

**E.    Zuniga's Claims Against Cooper**

Because Zuniga proceeded *in forma pauperis* in this case, the court ordered the United States Marshal Service to effect service of process on the City and Cooper on Zuniga's behalf. (ECF No. 5.)  The address provided by Zuniga for service on both the City and Cooper was 201 Poplar Avenue, Memphis, Tennessee 38103.  However, the summons for Cooper was returned unexecuted on December 3, 2014.  The return prepared by the U.S. Marshal stated that the Marshal "spoke with MPD Legal Department about individual named Quentin Cooper.  Advised that he could have been a crime scene investigator back in 2003.  Legal Department stated they have no information on a Quentin Cooper."  (ECF No. 13.)  Therefore, on March 10, 2015, the court ordered Zuniga to provide the correct home address for service on Cooper by April 10, 2015.  The court warned that failure to timely provide this information "may result in the dismissal of defendant Cooper without prejudice."  (ECF No. 27.)

Zuniga did not provide an address for service of process on Cooper in response to the court's order.  As such, Cooper has not been served with the summons and complaint.  Federal Rule of Civil Procedure 4(m) provides that, unless plaintiff shows good

cause, "[i]f a defendant is not served within 120 days after the complaint is filed, the court - on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Because Cooper has not been timely served with the summons and complaint, it is recommended that all claims against Cooper be dismissed without prejudice.

### III. RECOMMENDATION

For the reasons above, it is recommended that the City's motion be granted, and that Zuniga's motion to amend be denied. Additionally, it is recommended that all claims against Cooper be dismissed without prejudice.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

September 17, 2015
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**